# In the
# United States Court of Appeals
## For the Seventh Circuit

CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

No. 11-1774

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Plaintiff-Appellant*,

*v.*

UNITED AIRLINES, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10-cv-01699—**Harry D. Leinenweber**, *Judge*.

ARGUED OCTOBER 20, 2011—DECIDED SEPTEMBER 7, 2012

Before CUDAHY, KANNE, and SYKES, *Circuit Judges*.

CUDAHY, *Circuit Judge*.   First, the procedural posture of this case requires brief discussion. An earlier version of this opinion suggested that rehearing en banc was warranted for the full court to consider overruling *EEOC v. Humiston-Keeling,* 227 F.3d 1024 (7th Cir. 2000), in light of *U.S. Airways, Inc. v. Barnett,* 535 U.S. 391 (2002). The EEOC then petitioned for rehearing en banc, and United Airlines, Inc. filed a response. Thereafter, every member

of the court in active service approved overruling *Humiston-Keeling* and it was suggested that the panel use Circuit Rule 40(e) for that purpose. However, the usual formal en banc procedure involving argument to the full court was not pursued. We vacate the original panel opinion and now issue this opinion overruling *Humiston-Keeling*. We have circulated the new panel opinion to the full court under Rule 40(e), and no member of the court has asked to rehear the case en banc. With that procedural explanation, we now proceed to the merits.

In this case, the Equal Employment Opportunity Commission (EEOC) asks this court to change its interpretation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (ADA). The case turns on the meaning of the word "reassignment." The ADA includes "reassignment to a vacant position" as a possible "reasonable accommodation" for disabled employees. 42 U.S.C. § 12111(9). The EEOC contends that "reassignment" under the ADA requires employers to appoint employees who are losing their current positions due to disability to a vacant position for which they are qualified. However, this court has already held in *Humiston-Keeling*, 227 F.3d at 1029, that the ADA has no such requirement. The EEOC argues that the Supreme Court's ruling in *Barnett*, 535 U.S. at 391, undermines *Humiston-Keeling*. Several courts in this circuit have relied on *Humiston-Keeling* in post-*Barnett* opinions, though it appears that these courts did not conduct a detailed analysis of *Humiston-Keeling*'s continued vitality. The present case offers us the opportunity to correct this continuing error in our

Case: 1:10-cv-01699 Document #: 69 Filed: 07/18/13 Page 3 of 11 PageID #:367
Case: 11-1774     Document: 00712035986     Filed: 07/18/2013     Pages: 11

No. 11-1774 3

jurisprudence. While we understand that this may be a close question, we now make clear that *Humiston-Keeling* did not survive *Barnett*. We reverse and hold that the ADA does indeed mandate that an employer appoint employees with disabilities to vacant positions for which they are qualified, provided that such accommodations would be ordinarily reasonable and would not present an undue hardship to that employer. We remand with instructions that the district court determine if mandatory reassignment would be reasonable in the run of cases and if there are fact-specific considerations particular to United's employment system that would render mandatory reassignment unreasonable in this case.

In 2003, United Airlines set out Reasonable Accommodation Guidelines that address accommodating employees who, because of disability, can no longer do the essential functions of their current jobs even with reasonable accommodation. While the guidelines note that "transfer . . . [to] an equivalent or lower-level vacant position" may be a reasonable accommodation, the guidelines specify that the transfer process is competitive. Accordingly, employees needing accommodation will not be automatically placed into vacant positions but instead will be given preferential treatment. This allows employees needing accommodation to submit an unlimited number of transfer applications, be guaranteed an interview and receive priority consideration over a similarly qualified applicant—that is, if two candidates are equally qualified, the employee-applicant seeking accommodation will get the job.

The EEOC filed suit in San Francisco, alleging that United's policy violates the ADA. The district court granted United's motion to transfer the case to Illinois. That district court granted United's motion to dismiss the suit under Rule 12(b)(6). The court noted that binding precedent, *Humiston-Keeling*, 227 F.3d at 1028-29, held that a competitive transfer policy does not violate the ADA. The court also rejected the EEOC's contention that the Supreme Court's decision in *Barnett* undermined *Humiston-Keeling*.

We review a dismissal under Rule 12(b)(6) *de novo*. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). A complaint must provide "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This court construes the complaint "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the EEOC's] favor." *Tamayo*, 526 F.3d at 1081 (citing *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007)). We have jurisdiction to hear EEOC's appeal under 28 U.S.C. § 1291.

The district court noted that *Humiston-Keeling* is directly on point and has not been overruled by the Seventh Circuit. The district court is correct on both points. *Humiston-Keeling* involved a worker, Houser, who could no longer perform her conveyor job due to an injured arm. 227 F.3d at 1026. After taking a temporary greeter position, Houser applied for vacant clerical positions

No. 11-1774 5

within the company but did not get any of these jobs. *Id*. The EEOC brought suit, arguing the "reassignment form of reasonable accommodation . . . require[s] that the disabled person be advanced over a more qualified nondisabled person, provided only that the disabled person is at least minimally qualified to do the job, unless the employer can show undue hardship." *Id.* at 1027 (internal quotation marks omitted). This court rejected that assertion, holding the "ADA does not require an employer to reassign a disabled employee to a job for which there is a better applicant, provided it's the employer's consistent and honest policy to hire the best applicant for the particular job in question." *Id.* at 1029.

The EEOC invites this court to overturn *Humiston-Keeling*, arguing that *Barnett* undercuts the reasoning of *Humiston-Keeling*. In *Barnett*, the Supreme Court considered reassignment under the ADA in the context of a seniority system. 535 U.S. at 393-95. Robert Barnett injured his back while working as a cargo-handler for U.S. Airways. *Id.* at 394. He invoked seniority, not his disability status, and transferred to a mailroom position. *Id*. Later, at least two employees senior to Barnett intended to bid for the mailroom position. *Id.* Barnett argued he should be allowed to keep this position and claimed his reassignment was a reasonable accommodation mandated by the ADA because he was an individual with a disability capable of performing the essential functions of the mailroom job. *Id.* at 394-95.

The Supreme Court first noted that "[t]he simple fact that an accommodation would provide a 'preference'—in

6 No. 11-1774

the sense that it would permit the worker with a disability to violate a rule that others must obey—cannot, *in and of itself*, automatically show that the accommodation is not 'reasonable.'" *Id.* at 398 (emphasis in original). Instead, the Court outlined a two-step, case-specific approach. The "plaintiff/employee . . . need only show that an 'accommodation' seems reasonable on its face, *i.e.*, ordinarily or in the run of cases." *Id.* at 401. Once the plaintiff has shown he seeks a reasonable method of accommodation, the burden shifts to the defendant/employer to "show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Id.* at 402.[1] While Barnett's

---

[1] A helpful summary of the *Barnett* framework is provided in *Shapiro v. Township of Lakewood*, 292 F.3d 356, 361 (3d Cir. 2002):

> It therefore appears that the Court has prescribed the following two-step approach for cases in which a requested accommodation in the form of a job reassignment is claimed to violate a disability-neutral rule of the employer. The first step requires the employee to show that the accommodation is a type that is reasonable in the run of cases. The second step varies depending on the outcome of the first step. If the accommodation is shown to be a type of accommodation that is reasonable in the run of cases, the burden shifts to the employer to show that granting the accommodation would impose an undue hardship under the particular circumstances of the case. On the other hand, if the accommodation is not shown to be a type of accommodation that is reasonable in the run of cases, the employee can still prevail by showing that
> (continued...)

No. 11-1774 7

request for assignment to the mailroom was a "reasonable accommodation" within the meaning of the statute, the violation of a seniority system "would not be reasonable in the run of cases." *Id.* at 403. An "employer's showing of violation of the rules of a seniority system is by itself ordinarily sufficient" to demonstrate that the accommodation sought is unreasonable. *Id.* at 405. However, the Court was careful to point out that it was not creating a per se exception for seniority systems, since "[t]he plaintiff . . . nonetheless remains free to show that special circumstances warrant a finding that, despite the presence of a seniority system (which the ADA may not trump in the run of cases), the requested 'accommodation' is 'reasonable' on the particular facts." *Id.*

The EEOC points out that U.S. Airways relied heavily on *Humiston-Keeling* and, more importantly, that the *Barnett* Court flatly contradicted much of the language of *Humiston-Keeling*. U.S. Airways argued that it was not required to grant a requested accommodation that would violate a disability-neutral rule, using the argument from *Humiston-Keeling* that the ADA is "not a mandatory preference act" but only a "nondiscrimination statute." 227 F.3d at 1028. The *Barnett* Court rejected this anti-preference interpretation of the ADA, noting that this argument "fails to recognize what the Act speci-

---

(...continued)
    special circumstances warrant a finding that the accommodation is reasonable under the particular circumstances of the case.

fies, namely, that preferences will sometimes prove necessary to achieve the Act's basic equal opportunity goal." 535 U.S. at 397. Merely following a "neutral rule" did not allow U.S. Airways to claim an "automatic exemption" from the accommodation requirement of the Act. *Id.* at 398. Instead, U.S. Airways prevailed because its situation satisfied a much narrower, fact-specific exception based on the hardship that could be imposed on an employer utilizing a seniority system. *Id.* at 405.

The analysis of *Barnett*'s impact on *Humiston-Keeling* is further complicated by the fact that we are not the first panel to consider this issue. This court considered *Barnett*'s relationship to *Humiston-Keeling*, albeit in an abbreviated fashion and without the benefit of briefing, in *Mays v. Principi*, 301 F.3d 866 (7th Cir. 2002). In *Mays*, this court relied on *Humiston-Keeling* in finding that an employer did not violate the duty of reasonable accommodation in the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, by giving an administrative nursing position to a better qualified applicant, rather than to a disabled employee needing reassignment.[2] *Mays*, 301 F.3d at 871-72. The *Mays* Court interpreted the recently handed down *Barnett* decision actually to bolster *Humiston-Keeling* by equating seniority systems with any other normal method of filling vacancies. *Id.* at 872.

> [*Barnett*] holds that an employer is not required to give a disabled employee superseniority to enable

---

[2] Instead, the employer placed the disabled employee in a clerical position.

him to retain his job when a more senior employee invokes an entitlement to it conferred by the employer's seniority system. If for "more senior" we read "better qualified," for "seniority system" we read "the employer's normal method of filling vacancies," and for "superseniority" we read "a break," *U.S. Airways* becomes our case.

*Id*. at 872 (internal citation omitted).

The EEOC argues, and we agree, that the *Mays* Court incorrectly asserted that a best-qualified selection policy is essentially the same as a seniority system. In equating the two, the *Mays* Court so enlarged the narrow, fact-specific exception set out in *Barnett* as to swallow the rule. While employers may prefer to hire the best qualified applicant, the violation of a best-qualified selection policy does not involve the property-rights and administrative concerns (and resulting burdens) presented by the violation of a seniority policy. To strengthen this critique, the EEOC points out the relative rarity of seniority systems and the distinct challenges of mandating reassignment in a system where employees are already entitled to particular positions based on years of employment.

The Supreme Court has found that accommodation through appointment to a vacant position is reasonable. Absent a showing of undue hardship, an employer must implement such a reassignment policy. The *Mays* Court understandably erred in suggesting that deviation from a best-qualified selection policy always represented such a hardship.

Case: 1:10-cv-01699 Document #: 69 Filed: 07/18/13 Page 10 of 11 PageID #:374
Case: 11-1774  Document: 00712035986  Filed: 07/18/2013  Pages: 11

10  No. 11-1774

In any event, the *Barnett* framework does not contain categorical exceptions. On remand, the district court must conduct the *Barnett* analysis. In this case, the district court must first consider (under *Barnett* step one) if mandatory reassignment is ordinarily, in the run of cases, a reasonable accommodation.[3] Assuming that the district court finds that mandatory reassignment is ordinarily reasonable, the district must then determine (under *Barnett* step two) if there are fact-specific considerations particular to United's employment system that would create an undue hardship and render mandatory reassignment unreasonable.

For its part, United argues that this court should not abandon *Humiston-Keeling*, in part because the Eighth Circuit explicitly adopted the reasoning of *Humiston-Keeling* in *Huber v. Wal-Mart*, 486 F.3d 480, 483-84 (8th Cir. 2007), *reh'g en banc denied*, 493 F.3d 1002 (8th Cir. 2007),

---

[3] We do not believe this step will cause the district court any great difficulty. This is the very accommodation analyzed in *Barnett*. There, the Supreme Court "assume[d] that normally such a request would be reasonable within the meaning of the statute, were it not for one circumstance, namely, that the assignment would violate the rules of a seniority system." 535 U.S. at 403. There is no seniority system at issue here. However, we suppose it is possible there is some comparable circumstance of which we are unaware. We note for completeness that if mandatory reassignment is not ordinarily a reasonable accommodation, the EEOC can still prevail if it shows that special factors make mandatory reassignment reasonable in this case.

No. 11-1774 11

*cert. granted in part*, 552 U.S. 1074 (2007), *cert. dismissed*, 552 U.S. 1136 (2008). The Eighth Circuit's wholesale adoption of *Humiston-Keeling* has little import. The opinion adopts *Humiston-Keeling* without analysis, much less an analysis of *Humiston-Keeling* in the context of *Barnett*.[4] Two of our sister Circuits have already determined that the ADA requires employers to appoint disabled employees to vacant positions, provided that such accommodations would not create an undue hardship (or run afoul of a collective bargaining agreement): the Tenth in *Smith v. Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir. 1999) (en banc) and the D.C. in *Aka v. Washington Hospital Center*, 156 F.3d 1284 (D.C. Cir. 1998) (en banc). We feel that in light of *Barnett*, pursuant to Circuit Rule 40(e) as suggested under the procedure described above, we must adopt a similar approach.

For the foregoing reasons, the judgment of the district court is REVERSED and we REMAND this matter to the district court for further consideration consistent with this opinion.

---

[4] It is also worth noting that the Supreme Court granted certiorari in *Huber*, but the parties settled and the Supreme Court dismissed the case. 552 U.S. 1136 (2008).

9-7-12